[Cite as *Cleveland Hts. v. Coleman*, 2021-Ohio-846.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND HEIGHTS,  :

    Plaintiff-Appellee,  :

                                          No. 109527

    v.  :

JIMMY COLEMAN,  :

    Defendant-Appellant.  :

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  March 18, 2021

Criminal Appeal from the Cleveland Heights Municipal Court
Case No. CRB-1801162

### *Appearances:*

William R. Hanna, Director of Law, City of Cleveland Heights, and Pamela Roessner, Assistant City Prosecutor, *for appellee.*

Milton A. Kramer Law Clinic, Case Western Reserve University School of Law, Andrew S. Pollis, attorney, Rocco Screnci, P.P.A., Joseph Shell, and David A. Codispoti, certified legal interns, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Jimmy Coleman appeals his misdemeanor conviction for disorderly conduct, entered following a plea of no contest after the trial court rejected

Coleman's speedy trial violation claims advanced under R.C. 2941.401. For the following reasons, we affirm the conviction.

{¶ 2} Coleman was charged with stealing a pressure washer from a local retail establishment in July 2018, leading to the underlying prosecution in Cleveland Heights, Ohio. At the time he faced several, unrelated felony charges in the Cuyahoga County Court of Common Pleas. Coleman was held in the Cuyahoga County Jail pending the disposition of the felony charges. In January 2019, Coleman filed a "notice of availability" under R.C. 2941.401 claiming to be "incarcerated" at the county jail and that a "certificate of custody" was available "upon request."[1] There is no certificate of service accompanying the filing as required under Crim.R. 49(C), nor does the record contain evidence that Coleman contacted the warden or superintendent having custody of him to either provide a certificate of custody or to forward the notice of availability through the appropriate channels. The municipal court denied Coleman's motion to dismiss, in which he claimed that his trial was not timely under the 180-day limit imposed by R.C. 2941.401.

{¶ 3} Throughout these proceedings, Coleman repeatedly references the fact that he was "incarcerated" at the Cuyahoga County Jail at the time that his January 2019 notice of availability was filed. This phrasing of his status is curious

---

[1] R.C. 2941.401 creates the right to file "written notice of the place of his imprisonment and a request for a final disposition to be made of the matter." For the sake of simplicity, "notice of availability" shall be used throughout this opinion in reference to the statutory notice.

in light of the fact that R.C. 2941.401 entitles a person who "has entered upon a *term of imprisonment*" to file a notice of availability.  (Emphasis added.)  There is no statutory definition for the term "incarcerate," which is generally, and quite broadly, defined as "to put in prison" or "to subject to confinement."  Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/incarcerate (accessed Mar. 11, 2021).  Coleman's repeated usage of the term with respect to R.C. 2941.401 exposes a misnomer — that "incarcerated" is necessarily synonymous with "term of imprisonment."

{¶ 4}   R.C. 2941.401 provides that

> When a person has entered upon *a term of imprisonment* in a correctional institution of this state, and when during the continuance of *the term of imprisonment* there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, * * *.  The request of the prisoner *shall be accompanied* by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

(Emphasis added.)  Thus, the statute creates a fundamental prerequisite.  The person seeking to invoke R.C. 2941.401 must be serving a "term of imprisonment," a term of art as used throughout the Revised Code.  R.C. 1.05(A) provides that "imprisoned" or "imprisonment" "means being imprisoned under a sentence imposed for an offense or serving a term of imprisonment, prison term, jail term,

*term of local incarceration*, or other term *under a sentence imposed for an offense* * * *." (Emphasis added.) *Id.* Thus, a "term of imprisonment" is the length or duration of the final sentence imposed upon an offense, and a term of local incarceration is merely one method of serving such a sentence. *See State ex rel. McKee v. Cooper*, 40 Ohio St.2d 65, 73, 320 N.E.2d 286 (1974), citing R.C. 5141.01 ("term of imprisonment" is defined as "the duration of the state's legal custody and control over a person *sentenced*." (Emphasis added.)). By definition, "term of imprisonment" does not include being detained or confined in lieu of bail pending resolution of an indictment, information, or complaint since the confinement is not a result of a sentence being imposed upon an offense. *State v. Trammell*, 12th Dist. Butler Nos. CA2016-11-220, CA2016-11-221, and CA2016-11-222, 2017-Ohio-8198, ¶ 25, fn. 4; *see also State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, 30 N.E.3d 918, ¶ 54 (broadly defining the type of institution under the similarly worded R.C. 2963.30 but concluding that the prisoner must first begin serving the imposed sentence before that statute is properly invoked). Pretrial detention, or "confinement in lieu of bail while awaiting trial" in statutory parlance under R.C. 2967.191 (statutory section providing for the reduction of a prison term for related days of confinement), cannot be considered synonymous with a "term of imprisonment."

{¶ 5} This conclusion is bolstered by the fact that R.C. 2941.401 unambiguously requires the defendant to take steps to cause the warden or superintendent of the inmate's institution to deliver a "certificate of custody" to

accompany the "notice of availability." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 20 (finding R.C. 2941.401 to be unambiguous as a matter of law). A certificate of custody must contain, according to the express language of the statute, the term of commitment the defendant is then serving. A certificate of custody cannot be issued in the case of pretrial confinement — the term of commitment, and all other information that must be contained within the certificate, would be nonexistent in light of the transient nature of the pretrial detention. This distinction is important.

{¶ 6} R.C. 2941.401 in part "allows inmates to resolve the misdemeanor charges against themselves while serving a felony sentence. Since, the misdemeanor sentence would most likely run concurrent to the felony sentence, the misdemeanor sentence may be completed prior to the completion of the felony sentence." *State v. Lewis*, 7th Dist. Mahoning Nos. 19 MA 0100, 19 MA 0101, 19 MA 0102, 19 MA 0104, 19 MA 0105, and 19 MA 0106, 2020-Ohio-5294, ¶ 25. The goal of R.C. 2941.401 is to permit an inmate to have all cases resolved during the inmate's term of imprisonment so the resulting sentences are not aggregated by the passage of time between convictions. But the prerequisite to properly invoking the 180-day speedy trial time period under R.C. 2941.401 begins with the inmate currently serving a term of imprisonment imposed upon an offense at the time of filing a notice of availability. If an offender has not been convicted and not entered a term of imprisonment, R.C. 2941.401 is inapplicable. In that case, the offender's statutory rights are protected and governed by R.C. 2945.71 et seq.

{¶ 7} At the time Coleman filed his notice of availability in the underlying case, he was not serving a term of imprisonment. Coleman was confined in lieu of bail pending resolution of several felony cases. *See* Appellant's Brief, fn. 2 (noting the four cases that were then "pending" and the cause of Coleman's local "incarceration"). Nothing in the record establishes that Coleman was serving a term of imprisonment imposed in any of the cases in January 2019. His notice of availability was premature, but importantly, R.C. 2941.401 could not be invoked to start the running of the 180-day period thereunder. Coleman's speedy trial rights were governed by R.C. 2945.71 et seq., which provides that a person such as Coleman must be brought to trial "[w]ithin ninety days after the person's arrest or the service of summons," except, if applicable, that period may be extended for "any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state * * *." R.C. 2945.71(B)(2); 2945.72(A).

{¶ 8} Nevertheless, the foregoing analysis was not the basis of the trial court's decision. The city's sole contention is that even if R.C. 2941.401 applied to Coleman's situation, he did not cause the notice of availability to be served on the prosecutor, nor did he properly seek the certificate of custody through the warden. Under well-settled law, in order to avail himself of R.C. 2941.401, the "inmate must properly complete and forward all necessary information and documents to the warden [or superintendent having custody of the inmate] for processing as prescribed by the statute." *State v. Gill*, 8th Dist. Cuyahoga No. 82742, 2004-Ohio-

1245, ¶ 17. R.C. 2941.401 "imposes no duty on the state until such time as the incarcerated defendant provides the statutory notice," and the 180-day period does not commence until the prosecutor and the court receive the notice of availability. *Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 20.

{¶ 9} Instead of erring toward the letter of the statute and initiating the statutory process by forwarding the necessary information to the warden or superintendent of the institution where he was held, Coleman simply executed a boilerplate document that he personally sent to the municipal court — a document that omits both an identifying case caption and a certificate of service.[2] The first time the prosecutor knew or should have known of the notice of availability was at Coleman's initial appearance in the underlying matter. The 180-day period never commenced during Coleman's transient stay in county jail.

{¶ 10} But beyond that deficiency, assuming for the sake of discussion that Coleman complied with the letter of R.C. 2941.401 and the 180-day period commenced, Coleman was released from Cuyahoga County Jail two months after filing the notice of availability and Coleman's release negated his right to be brought to trial within the 180-day period. *State v. Hemingway*, 8th Dist. Cuyahoga Nos. 96699 and 96700, 2012-Ohio-476, ¶ 21; *see also State v. McIntyre*, 4th Dist. Ross

---

[2] Coleman was being held and awaiting trial on four felony charges in the county jail when he filed his notice of availability. He was represented by counsel on those felony matters. Regardless, Coleman's attempt to invoke R.C. 2941.401 does not alleviate the requirement that Coleman follow the mandates of the statute, which require him to forward the information to the warden or superintendent that initiates the service of the notice of availability on the prosecutor.

No. 15CA3524, 2016-Ohio-5363, ¶ 26, fn. 1; *State v. Beckett*, 7th Dist. Harrison No. 06 HA 584, 2007-Ohio-3175; *State v. Clark*, 12th Dist. Warren No. CA2007-03-037, 2008-Ohio-5208.

{¶ 11} In *Hemingway*, it was concluded that "R.C. 2941.401 expressly limits its application to those individuals who enter a term of imprisonment and remain in prison during the pendency of the untried case." *Id.* at ¶ 20. *Hemingway* found the unambiguous language of R.C. 2941.401 to be controlling: "*when during the continuance* of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner," the defendant shall be brought to trial within 180 days. (Emphasis added.) In other words, an offender who has been released from the term of imprisonment during the 180-day period is no longer in the class of persons covered by R.C. 2941.401. In those situations, the offender's statutory speedy trial rights are protected through application of R.C. 2945.71 et seq. *Id.* Coleman does not claim the trial court erred in relying on *Hemingway*, but instead asks this panel to overrule controlling precedent.

{¶ 12} Coleman claims that *Hemingway's* interpretation of R.C. 2941.401 is based on misapplication of *State v. Thompson*, 19 Ohio App.3d 261, 263, 483 N.E.2d 1207 (8th Dist.1984), which was cited as being illustrative in *State v. Ramey*, 8th Dist. Cuyahoga No. 69080, 1996 Ohio App. LEXIS 956, 1 (Mar. 14, 1996). In *Thompson*, the panel reviewed the policy rationales of R.C. 2963.30, which are not included as part of R.C. 2941.401, in concluding that a release from the term of imprisonment divests the inmate of the right to be tried within the period set forth

in R.C. 2963.30. Under R.C. 2963.30, the legislature expressly declared that outstanding charges "against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Based on that policy concern, R.C. 2963.30 secures an inmate's right to seek speedy disposition of the outstanding charges. *Id.* *Thompson* concluded that an offender's release from a term of imprisonment renders the policy concern to be irrelevant, and thus, a released offender's rights are not governed by R.C. 2963.30. This observation has no bearing on R.C. 2941.401.

{¶ 13} It suffices that *Hemingway's* conclusion to require an offender to be serving a term of imprisonment during the entire 180-day period was expressly based on the plain language of the R.C. 2941.401. *Hemingway,* 2012-Ohio-476, at ¶ 20. Further, *Hemingway's* reference to *Ramey* was merely illustrative in nature. *Id.* at ¶ 21. As an unreported decision issued before May 1, 2002, *Ramey* is not considered controlling authority. *Rayco Mfg. v. Murphy*, 2018-Ohio-4782, 117 N.E.3d 153, ¶ 71 (8th Dist.), fn. 7, *vacated on other grounds,* 2019-Ohio-3756, 142 N.E.3d 1267, citing *In re B.L.,* 3d Dist. Allen Nos. 1-15-65, 11566, 1-15-67, and 1-15-68, 2016-Ohio-2982, ¶ 11. *Hemingway's* analysis and conclusion is not based on the legislative policy rationales codified in R.C. 2963.30, and therefore, Coleman's argument, even if considered, is without merit.

{¶ 14} Regardless, we cannot offer Coleman his requested relief of overturning *Hemingway*. As one panel of this court, we lack authority to contravene controlling authority. App.R. 26(A)(2). In addition, even if we could consider the argument on its merit, Coleman's reliance on *Snyder v. Sumner*, 960 F.2d 1448, 1454 (9th Cir.1992), and *Odhinn v. State of Wyoming*, 2003 WY 169, 82 P.3d 715, ¶ 30, to support his claim, that the continued imprisonment is not required in order to maintain the right to the 180-day time constraint imposed under R.C. 2941.401, is misplaced.

{¶ 15} In both cases, the respective courts were reviewing application of the Interstate Agreement on Detainers ("IAD"), under which the member states enacted legislation to effectuate the state's agreement to provide for prompt disposition of all charges against the offender. The language used is similar to the language employed by R.C. 2941.401 — whenever during the continuance of a term of imprisonment an offender serves notice on the prosecutor and respective court, the receiving state has 180 days (or whatever period is set forth by the respective statute) within which to take the matter to trial. *See, e.g.,* R.C. 2963.30, Article III(a). *Snyder* involves the question of whether paroling an inmate in the sender state affects the applicability of the IAD, contrasting parole with a straight release of the offender following completion of the term of imprisonment. *Odhinn* involves a case in which there was a question as to whether the offender had been released from the prison term by the sender state — the majority there concluded he had not been released. Importantly, the *Snyder* and *Odhinn* courts reiterated the general rule

that an offender who has been released from the term of imprisonment during the speedy trial period provided under the IAD is no longer in the class of persons covered by the statute. *Odhinn* at ¶ 34 (Golden, J., dissenting) (string citing cases that stand for the proposition that the IAD no longer applies once the offender is released from the prison term during the particular period provided by the applicable state law implementing the IAD); *Snyder* at 1457 (Burns, J., dissenting) (citing *United States v. Black*, 609 F.2d 1330 (9th Cir.1979), in which it was concluded that the offender is not covered by the IAD after being released on parole by the sender state); *see also Cunningham v. State*, 341 Ark. 99, 104, 14 S.W.3d 869 (2000) ("*Snyder* ignores the plain language contained in Article III(a) of the Act, which, by its own terms, provides the IAD only applies during the period when a prisoner continues to serve a term of imprisonment."); *State v. Frohnhofer*, 150 N.M. 643, 2011-NMCA-109, 264 P.3d 739, ¶ 7 (string citing cases from around the country relying on a plain reading of continuous imprisonment language to reach the same conclusion). The cited case law pertaining to the IAD provides no support for Coleman's claims, and moreover, the two cases are factually distinct.

{¶ 16} And finally, as to this line of argument, Coleman claims that the canon of statutory construction, expressio unius est exclusio alterius, the express mention of an item excludes others, must be considered in this case because R.C. 2941.401 expressly provides that the act of escaping from a term of imprisonment voids an earlier notice of availability. According to Coleman, the legislature intended for R.C. 2941.401 to continue following the inmate's release from a term of imprisonment

because an escape was the only "termination" of the term of imprisonment to void application of the statute. Such an argument is unavailing.

{¶ 17} An escape and a release after completely serving a term of imprisonment are remarkably different situations. An inmate who has escaped from prison must finish serving the imposed term of imprisonment from which he escaped — the term of imprisonment does not simply expire as a result of the misconduct. Thus, the escape exception applies to divest those inmates, who "during the continuation" of the prison term had delivered the requisite notice and had originally secured the right to be tried within 180 days, of the rights secured under R.C. 2941.401 during the continuation of the term of imprisonment following capture. In other words, escape presents an exception to R.C. 2941.401 that otherwise applies as contrasted against being released from the term of imprisonment, which renders R.C. 2941.401 inapplicable altogether. The trial court appropriately relied on *Hemingway* in concluding that R.C. 2941.401 was rendered inapplicable through his "release" from the pretrial confinement, and Coleman's arguments to the contrary are overruled.

{¶ 18} In the alternative, Coleman claims the 82 days that transpired between his filing the notice of availability and his release from jail should be counted against the 90-day period under R.C. 2945.71(B)(2), a form of hybrid application of both R.C. 2941.401 and 2945.71 et seq. In presenting this hybrid application, Coleman suggests that after his release from county jail, the speedy trial time stopped accruing until his arrest. That argument appears based on a

misunderstanding of the statutory framework. Once a triggering event occurs, either an offender's arrest or the service of a summons, the offender must be brought to trial within the respective period established under R.C. 2945.71, unless that time is extended under R.C. 2945.72. The suggestion that the time starts and stops accruing cannot be accepted, and there are no exceptions under R.C. 2945.72 that permit the trial court to extend the statutory time period between an offender's release before fully invoking R.C. 2941.401 and the arrest or service of the summons under R.C. 2945.71. Regardless, Coleman is asking to redraft R.C. 2945.71 to include his filing a notice of availability under R.C. 2941.401 as an event that triggers commencement of the time period under R.C. 2945.71 in addition to an arrest or service of summons. We decline to do so. *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 220, 1994-Ohio-92, 631 N.E.2d 150, and *State v. S.R.*, 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319 (1992) ("[I]t is the duty of the court to give effect to the words used and not to insert words not used.").

{¶ 19} Inasmuch as Coleman relies on a footnote from *Hemingway*, in which the panel opined that the time between service of the inmate's notice and the inmate's release from prison may be counted against the state for speedy trial purposes under R.C. 2945.71, in further support of this argument, we must reject the urge to adopt the obiter dictum wholesale. *Id.* at ¶ 22, fn. 1. That statement in *Hemingway* was not dispositive in the case, and therefore, is not controlling

authority. *See, e.g., State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 27. As *Hemingway* concluded, when an inmate is discharged from custody during the period set forth under R.C. 2941.401, "he loses the right to be tried by Ohio within one hundred eighty days." *Ramey*, 8th Dist. Cuyahoga No. 69080, 1996 Ohio App. LEXIS 956, at 16 (Mar. 14, 1996), quoting *Thompson*. After being released, the inmate's right to a speedy trial on the charges pending is solely governed by R.C. 2945.71 et seq. and that analysis turns on whether an event triggering application of that section occurred during the inmate's term of imprisonment. *See, e.g., Ramey* (the speedy trial time under R.C. 2945.71 was independent of that which had accrued under R.C. 2941.401 upon the inmate's release from the term of imprisonment); *State v. Beverly*, 4th Dist. Ross No. 04CA2809, 2005-Ohio-4954, ¶ 15 (applying 270-day speedy trial time period to offender released from prison for the purposes of reconciling R.C. 2941.401 and R.C. 2945.71 et seq.).

{¶ 20} R.C. 2941.401 and R.C. 2945.71 et seq. are mutually exclusive. *State v. Irish*, 2019-Ohio-2765, 140 N.E.3d 209, ¶ 14 (3d Dist.) (R.C. 2945.71 governs an inmate's speedy trial rights unless R.C. 2941.401 is properly invoked); *State v. Smith*, 2018-Ohio-5020, 124 N.E.3d 301, ¶ 40 (4th Dist.); *State v. Jones*, 10th Dist. Franklin No. 11AP-1123, 2012-Ohio-3767, ¶ 23. Once an offender is released from the term of imprisonment even after initially invoking R.C. 2941.401, his statutory speedy trial rights are governed by R.C. 2945.71 and the extensions permitted under R.C. 2945.72. Coleman was not arrested until August 20, 2019, although the warrant was issued a year earlier.

{¶ 21} Coleman indirectly suggests that *State v. Collins*, 91 Ohio App.3d 10, 14, 631 N.E.2d 666 (6th Dist.1993), supports the proposition that the date the warrant was issued in the underlying matter was the triggering event for R.C. 2945.71, although no summons was served or no arrest executed, because Coleman was "incarcerated" in Cuyahoga County Jail at the time the warrant was issued. *Collins* concluded that an offender, who is arrested and jailed when charged with unrelated crimes, is subject to the triple count provisions of R.C. 2945.71(E) from the date of the issuance of the new warrant if all crimes are prosecuted in the same indictment. *Id. Collins* is inapplicable to the current situation in which separate prosecutions occurred in different jurisdictions. In this case, Coleman's arrest first triggered application of R.C. 2945.71. *McIntyre*, 4th Dist. Ross No. 15CA3524, 2016-Ohio-5363, at ¶ 20-21, citing *State v. McKinney*, 4th Dist. Ross No. 97CA2345, 1998 Ohio App. LEXIS 3454, at 9 (July 17, 1998) (plain language of R.C. 2945.71 requires an actual arrest or service of summons on the criminal charges to commence the speedy trial period).

{¶ 22} With respect to Coleman's statutory speedy trial rights, between Coleman's arrest on August 20, 2019, and his plea of no contest on January 17, 2020, approximately 150 calendar days transpired. The record does not contain any indication that a summons was served before Coleman's arrest in this case. R.C. 2945.71(B)(2). According to the record in this case, Coleman waived his speedy trial rights at his initial appearance on September 3, 2019, but withdrew that request on October 16, 2019 (tolling 43 days in between). *State v. King*, 70 Ohio St.3d 158,

1994-Ohio-412, 637 N.E.2d 903, syllabus;[3] *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 18 (defendant relinquishes his right to a speedy trial until the waiver is withdrawn). On October 22, Coleman filed a motion to dismiss that was decided on November 14, 2019 (tolling another 23 days). R.C. 2945.72(E). On December 6, 2019, Coleman, through counsel of record, stipulated that the time after January 10, 2020, would not count against the city (tolling 7 days). Those three events alone tolled 73 of the 150 calendar days for the purposes of the 90-day period provided under R.C. 2945.71(B)(2). Moreover, Coleman has not preserved a constitutional claim for appellate review.

{¶ 23} The trial court did not err by denying Coleman's motion to dismiss in which he alleged a violation of his statutory speedy trial rights under R.C. 2941.401. Even if we presumed for the sake of this discussion that Coleman could invoke R.C. 2941.401, once he was released from Cuyahoga County Jail, the speedy trial period

---

[3] In *King*, the Ohio Supreme Court concluded that "[t]o be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." *Id.* at syllabus. In this case, Coleman waived his speedy trial rights at his initial appearance according to the notation in the trial court's docket entry. Although the form that included Coleman's not guilty plea indicated that he did not waive his speedy trial rights, we must presume that Coleman orally did so in open court based on the record in this case. On October 10, 2019, Coleman moved to withdraw his speedy trial waiver based on his lack of counsel at the September 3, 2019 first appearance. At the least, Coleman ratified his intent to voluntarily relinquish his rights at the earlier appearance — a defendant cannot seek to withdraw a waiver that never occurred. Regardless, if there is error with respect to the court indicating that Coleman waived his right to a speedy trial at the initial appearance, *see, e.g., State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 21, Coleman invited further constitutional error by filing a motion to withdraw in which he conceded that he waived his speedy trial rights and requested relief from that waiver. He would be judicially estopped from arguing that there was no valid waiver after filing a successful motion to withdraw it. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 22.

thereunder no longer applied, and his statutory rights were solely governed by R.C. 2945.71 et seq. We find no error based on the arguments presented, and the conviction is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EMANUELLA D. GROVES, J., CONCUR